# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ x

Joe Lieber, individually and on behalf of all others similarly situated,

           Plaintiff,

    v.

Igloo Products Corp.,

         Defendant.

------------------------------------------------------ x

CASE NO.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Joe Lieber ("Plaintiff") by and through his counsel, brings this Class Action Complaint against Defendant Igloo Products Corp. ("Defendant"), on behalf of himself and all others similarly situated, and alleges upon personal knowledge as to his own actions, and upon information and belief as to his counsel's investigations and all other matters, as follows:

## SUMMARY OF THE ACTION

1.    This class action challenges Defendant's false and deceptive practices in the labeling, marketing, and sale of its Igloo brand ReCool Reusable Coolers ("ReCool Products"), EcoCool Hardshell Coolers ("EcoCool Products"), REPREVE Cooler Bags ("REPREVE Products"), and Igloo products marketed, advertised, and/or labeled "Made in the USA" ("Made in USA Products") (collectively, the "Products").[1] Specifically, during the relevant class period, Defendant has made unqualified "biodegradable" claims for the ReCool Products, unqualified "recycled content" claims for the EcoCool and REPREVE Products, and

---

[1] The Products are fully defined in paragraph 14.

unqualified "Made in the USA" claims for the Made in USA Products, all of which mislead reasonable consumers.

2.    ***First***, Defendant markets and sells the ReCool Products with front-label representations such as "Made From Biodegradable Materials" and "Biodegradable" (the "Biodegradable Representations"). These representations lead reasonable consumers to believe that the ReCool Products will completely degrade within a reasonable time period after customary disposal. However, unbeknownst to consumers, the ReCool Products are customarily thrown in the trash and end up in landfills, which do not have conditions necessary to allow the Products to fully degrade within any reasonable period of time.

3.    ***Second***, Defendant markets and sells its EcoCool and REPREVE Products with front-label representations such as "Made With Post Consumer Recycled Plastic Material," and "Made From Recycled Plastic Bottles," often accompanied by chasing-arrows recycling symbols (the "Recycled Content Representations"). These representations lead reasonable consumers to believe that these products are entirely composed of recycled plastic or recycled materials. However, unbeknownst to consumers, only certain components (e.g., the outer shell) of the coolers and bags contain recycled material, while other significant parts (e.g., foam insulation, interior linings) do not. Defendant provides no disclaimer or qualification indicating that its EcoCool and REPREVE Products contain only partial recycled materials.

4.    ***Third,*** Defendant markets and sells the Made in USA Products with the representations that they are "Made in USA" or "Made in the USA" (the "Made in USA Representations"). These representations lead reasonable consumers to believe that all or virtually all of the raw materials used in the products are made and sourced from within the United States. Defendant provides no disclaimer or qualification indicating that its Made in

2

USA Products contain raw materials that are made and sourced from outside the United States.

5.      As a result of Defendant's unqualified Biodegradable Representations, Recycled Content Representations, and Made in USA Representations, consumers reasonably believe they are purchasing products that are biodegradable, and/or made entirely with recycled content, and/or made entirely of raw materials made and sourced in the United States, when that is not the case. Plaintiff and other consumers paid a price premium for the Products based on Defendant's false and misleading claims. Had they known the truth about the ReCool Products inability to biodegrade under customary landfill conditions, or that only part of the EcoCool/REPREVE Products is made from recycled materials, or that the Made in USA Products were not entirely made of raw materials made and sourced in the United States, they would not have purchased them or would have paid significantly less for them. As a result, they have been financially injured as a direct result of Defendant's labeling and advertising.

6.      Plaintiff brings this class action lawsuit on behalf of himself, and all others similarly situated.

7.      Plaintiff, on behalf of himself and other consumers, is seeking damages, restitution, declaratory and injunctive relief, and all other remedies the court deems appropriate.

## PARTIES

### I.      Plaintiff

8.      Plaintiff is a citizen of New York. During the relevant class period, including in or around late 2024, Plaintiff purchased the ReCool Products from a Target store in New York. Based on the representation that the Products are biodegradable ("Made from Biodegradable Materials" and "Biodegradable") and made in the USA, Plaintiff reasonably

believed the ReCool Products would completely degrade within a reasonable period of time after customary disposal and that the Products were made of raw materials made and sourced in the United States. Had Plaintiffs known that this is not the case, Plaintiff would not have purchased the ReCool Products, or would have paid significantly less for them. Plaintiff therefore has suffered injury in fact and has lost money as a result of Defendant's misleading, false, unfair, and fraudulent practices, as described herein.

## I.    Defendant

9.    Defendant Igloo Products Corp. is a Delaware corporation with its principal place of business in Katy, Texas. Defendant manufactures, labels, distributes, sells, and advertises the Products across the country, including in New York. Defendant has maintained substantial distribution, marketing, and operations in this County. Defendant has also sold the Products in this County.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as at least some members of the proposed classes are citizens of states different than Defendant; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

11.    This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in New York, and intentionally and purposefully placed the Products into the stream of commerce within New York.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to claims occurred in this District.

Namely, Plaintiff purchased one of the Products from a Target store in this District.

## FACTUAL BACKGROUND

### A.    Background Information

13.    Defendant is responsible for the manufacturing, marketing, labeling, advertising, and sale of the Products at issue in this case. The Products are marketed biodegradable, made from recycled materials, and/or Made in the USA. Defendant sells the Products directly to consumers through its website, as well as across at least 73 retail partners across the country including Target, Walmart, and Costco.[2]

14.    The Products at issue in this action include the following Igloo brand products:

    a.  EcoCool Products

        i.  EcoCool Little Playmate 7 Qt Cooler

        ii.  EcoCool Latitude 52 Qt Cooler

        iii.  EcoCool Latitude 30 Qt Cooler

        iv.  EcoCool Latitude 90 Qt Roller Cooler

        v.  EcoCool Latitude 60 Qt Roller Cooler

    b.  ReCool Product

        i.  ReCool 16 Qt Cooler

    c.  REPREVE Products

        i.  Packable Puffer 20-Can Cooler Bag

        ii.  FUNdamentals Hip Pack Cooler Bag

        iii.  FUNdamentals Vertical Sling Cooler Bag

---

[2] https://www.igloocoolers.com/pages/authorized-retailers

        iv.   FUNdamentals Messenger Cooler Bag

     d.  <u>Made in USA Products</u>

        i.   Igloo coolers/products, including the EcoCool, ReCool, and REPREVE products that are labeled, marketed, and/or advertised as "Made in the USA"

**B.    Defendant's False and Misleading Biodegradable Representations**

15.    During the relevant class period, Defendant has sold its ReCool Products with unqualified biodegradable claims. These unqualified representations include "Made from Biodegradable Materials" and "Biodegradable." *See images below.*







16.     These representations lead reasonable consumers to believe the ReCool Products will completely degrade within a reasonable period of time after customary disposal.

17.     Unbeknownst to consumers, the Biodegradable Representations are false and misleading because the ReCool Products do not completely degrade within a reasonable time after customary disposal, because they are typically thrown in the trash and end up in landfills—an environment that lacks the necessary conditions (oxygen, moisture, microbial activity) for meaningful biodegradation.

18.     The Federal Trade Commission's ("FTC") Green Guides addresses the issues raised in this case directly. The FTC Green Guides were created by the FTC to help companies avoid making misleading and deceptive claims. Under 16 C.F.R. § 260.8(c) of the Green Guides, it is deceptive to make an unqualified "degradable" claim if an item enters the solid waste stream and does not fully decompose within one year under customary disposal conditions. *See below.*

> It is deceptive to make an unqualified degradable claim for items entering the solid waste stream if the items do not completely decompose within one year after customary disposal. ***Unqualified degradable claims for items that are customarily disposed in landfills, incinerators, and recycling facilities are deceptive because these locations do not present conditions in which complete decomposition will occur within one year***.

16 C.F.R. § 260.8(c). (emphasis added)

19.     Because the ReCool Products end up in landfills, they *cannot* decompose in a reasonable amount of time after customary disposal.

20.     It is for this reason that the FTC requires companies to ***clearly and prominently*** qualify biodegradable claims "to avoid deception about: (1) the product's or package's ability to degrade in the environment where it is customarily disposed." 16 C.F.R. § 260.8(d). Here,

there is no qualification whatsoever of the Biodegradable Representations to avoid consumer deception, and thus, the FTC's Green Guides further support Plaintiff's claims.

21.    As demonstrated below, scientific evidence demonstrates that landfill conditions prevent meaningful biodegradation. Buried trash in landfills is typically deprived of oxygen, moisture, and beneficial microbes, and is more likely to be "mummified" than decomposed within a meaningful timeframe:

- "Biologically and chemically, a landfill is a much more static structure than is commonly supposed. For some kinds of organics, biodegradation goes on for a little while, and then slows to a virtual standstill. For other kinds, biodegradation never really gets under way at all. Well-designed and managed landfills seem to be far more apt to preserve their contents for posterity than to transform them into humus or mulch. They are not vast composters; rather, they are vast mummifiers."[3]

- "The Garbage Project's excavations have unearthed such preserved perishables as heads of lettuce, Kaiser rolls, hot dogs, corncobs with their kernals intact, guacamole, and literally tons of datable, readable newspapers."[4]

- "Decomposition at most sites extends over a period of 20 years or more, largely due to low moisture input and poor distribution of moisture within a landfill. . . . Although landfills are currently designed for minimum rates of biodegradation by retarding moisture influx, it is

---

[3] William Rathje & Cullen Murphy, Rubbish! The Archaeology of Garbage, 112-114 (2001).
[4] W. L. Rathje, et al., The Archaeology of Contemporary Landfills, 442-443 (1992).

important to consider designs to promote faster biodegradation, both for commercial gas recovery and faster return of landfill sites to alternative land uses."[5]

**C.    Defendant's False and Misleading Recycled Content Representations**

22.    During the relevant class period, Defendant has sold its EcoCool Products and REPREVE Products with prominent front-label representations that lead reasonable consumers to believe that the Products are made entirely from recycled materials. These unqualified statements include: "Made With Post Consumer Recycled Plastic Material" and "Made From Recycled Plastic Bottles" or "Recycled Materials," and they are often accompanied by a Möbius loop or "chasing arrows" symbol, which consumers universally understand to signify fully recycled content (herein, the "Recycled Content Representations"). *See images below.*

---

[5] Jean E. Bogner et al., Modified Biochemical Methane Potential (BMP) Assays to Assess Biodegradation Potential of Landfilled Refuse (1989), https://www.osti.gov/servlets/purl/6425060.





23.     The Recycled Content Representations lead reasonable consumers to believe the entirety of the EcoCool and REPREVE Products are made of recycled plastic/materials.

24.     Unbeknownst to consumers, only certain components of these Products—typically exterior portions such as the outside plastic shell—contain recycled plastic. Other significant parts, including foam insulation, interior linings, and/or other structural components, are not made from recycled materials. Nothing in Defendant's labeling or advertising discloses that these Products are, at best, ***partially*** made from recycled materials.

25.     The FTC's Green Guides require companies that make recycled content claims to qualify those claims when products are not 100% recycled. Specifically, 16 C.F.R. § 260.13(c) states:

> "Marketers can make unqualified claims of recycled content if the entire product or package, excluding minor, incidental components, is made from recycled material. For items that are partially made of recycled material, the marketer should ***clearly and prominently qualify the claim to avoid deception about the amount or percentage, by weight, of recycled content.***"

16 C.F.R. § 260.13(c) (emphasis added)

26.     Moreover, Example 8 in the FTC Green Guides explains that a product labeled with the three-chasing-arrows symbol (Möbius loop), without explanation, "likely conveys that the [product or] packaging is both recyclable and made entirely from recycled material." Unless the marketer can substantiate both claims, the Green Guides instruct that the representation must be qualified. [6]

27.     Defendant's labeling and marketing for the EcoCool Products and REPREVE Products fail to provide any such qualifications. Thus, the FTC's Green Guides further support

---

[6] StopWaste.org, Environmental Claims on Packaging: Universal Recycling Symbol (Möbius Loop), https://guides.stopwaste.org/packaging/avoiding-pitfalls/universal-recycling-symbol (last visited Jan. 28, 2025).

Plaintiff's claims. As a result, consumers are misled into believing these Products are made entirely of recycled materials.

28.     Defendant's failure to adequately disclose the limited recycled content of the EcoCool Products and REPREVE Products misleads consumers into believing these Products are made entirely of recycled materials.

**D.     Defendant's False and Misleading Made in USA Representations**

29.     During the relevant class period, Defendant has sold its Made in USA Products with the unqualified representations, "Made in USA" and "Made in the USA."

30.     These representations lead reasonable consumers to believe that all or virtually all of the raw materials used in the Made in USA Products are made and sourced from within the United States.

31.     Unbeknownst to consumers, the Made in USA Representations are false and misleading because the Made in USA Products are not entirely made of raw materials made and sourced in the United States.

32.     The Federal Trade Commission ("FTC") defines "Made in the United States," and its synonyms, such as "Made in U.S.A.," to mean any unqualified representations, express or implied, that a product, and by extension, the raw materials used in its manufacture, are of U.S. origin. 16 C.F.R. §§ 323.1(a), 323.2. Companies like Defendant that use unqualified claims that products are "Made in U.S.A." can mislead consumers when raw materials used in those products are sourced and/or transformed outside of the United States.

33.     Further, the FTC considers it a deceptive practice to label a product as "Made in the United States" (or substantially similar representations) unless (1) the final assembly or processing of the product occurs in the United States, (2) all significant processing that goes

int the product occurs in the United States, and (3) all or virtually all ingredients or components of the product are made and sourced in the United States. 16 C.F.R. § 323.2.

**E.      Defendant's Knowledge Regarding the Biodegradable Representations, Recycled Content Representations, and Made in USA Representations and Plaintiff's Reliance**

34.    Defendant knew or should have known that Plaintiff and other consumers purchasing ReCool Products would rely on the Biodegradable Representations and would be misled and induced into buying ReCool Products because they believed they would completely degrade within a reasonable time after customary disposal.

35.    Plaintiff and other consumers reasonably understood Defendant's Biodegradable Representations to mean that ReCool Products would completely break down under normal landfill conditions within a reasonable period of time. In reliance on these representations, Plaintiff and other consumers purchased the ReCool Products at a premium price.

36.    Defendant also knew or should have known that consumers purchasing EcoCool and/or REPREVE Products would rely on the Recycled Content Representations and would be misled and induced into buying these Products because they believed the Products were made entirely from recycled materials.

37.    Consumers reasonably understood Defendant's Recycled Content Representations to mean that the EcoCool and/or REPREVE Products were comprised entirely of recycled materials. In reliance on these representations, consumers also purchased those Products at a premium price.

38.    Defendant also knew or should have known that consumers purchasing Made

in USA Products would rely on the Made in USA Representations and would be misled and induced into buying these Products because they believed the Products were made entirely from raw materials made in the USA.

39.     Consumers reasonably understood Defendant's Made in USA Representations to mean that the Made in USA Products were made of entirely raw materials made and sourced in the USA. In reliance on these representations, consumers also purchased those Products at a premium price.

40.     During the relevant statute of limitations period, Defendant, directly and/or through its agents and affiliates, formulated, manufactured, labeled, marketed, distributed, and sold the Products throughout New York and the United States. Defendant thus controlled all aspects of the Products' labeling, packaging, and promotional statements and knew exactly what environmental claims it was making to consumers.

41.     Plaintiff and other consumers did not know, and had no reason know, that the Defendant's Biodegradable Representations, Recycled Content Representations, and Made in USA Representations were false or misleading. Indeed, consumers have no practical means to test the ReCool Products' biodegradability in landfills, to verify the percentage of recycled materials in EcoCool or REPREVE Products, or to verify the manufacturing and assembly locations of the Made in USA Product components before purchase.

42.     Each consumer who purchased the Products was exposed to the same or substantially similar unqualified marketing claims, which uniformly implied that the Products were fully biodegradable, made entirely from recycled materials, or entirely made of raw materials made and sourced in the United States, when in fact they were not.

43.     Plaintiff and other consumers have paid an unlawful premium for the Products.

Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that (1) ReCool Products do not meaningfully biodegrade under customary disposal in landfills, (2) EcoCool/REPREVE Products are not made entirely from recycled materials, and (3) Made in USA Products are not made of entirely raw materials made and sourced in the USA. Therefore, Plaintiff and other consumers purchasing the Products suffered injury-in-fact and lost money as a result of Defendant's false, misleading, unfair, and fraudulent practices as described herein.

44.    As a result of its misleading business practice, and the harm caused to Plaintiff and other consumers, Defendant should be required to pay for all damages caused to consumers, including Plaintiff. Furthermore, Defendant should be enjoined from engaging in these deceptive practices.

45.    Despite being deceived by Defendant, Plaintiff is likely to purchase coolers and bags in the future, including the Products, because he regularly shops at stores that sell the Products and has a desire to purchase products that are biodegradable and/or made from entirely recycled materials. However, absent an injunction preventing Defendant from using unqualified and deceptive environmental claims on the Products, Plaintiff will be unable to rely with confidence on Defendant's representations in the future and may refrain from purchasing otherwise desirable Products. Similarly, other consumers risk continued deception until Defendant ceases these unlawful practices. Until Defendant removes the false and misleading representations on the Products or is enjoined from making further false and misleading representations, Plaintiff and other consumers will continue to be misled and bear this ongoing injury.

## CLASS DEFINITION AND ALLEGATIONS

46.   Plaintiff brings this matter on behalf of himself and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiff seeks to represent the following classes (collectively the "Classes"):

**Nationwide Eco Class**
All residents of the United States who purchased any of the ReCool, EcoCool, REPREVE Products in the United States within the applicable statute of limitations period ("Nationwide Eco Class").

**Nationwide Made in USA Class**
All residents of the United States who purchased any of the Made in USA Products in the United States within the applicable statute of limitations period ("Nationwide Made in USA Class") (collectively, with the Nationwide Eco Class, the "Nationwide Classes").

**New York Eco Class**
All residents of New York who purchased any of the ReCool, EcoCool, REPREVE Products in New York within the applicable statute of limitations period ("New York Eco Class")

**New York Made in USA Class**
All residents of New York who purchased any of the Made in USA Products in New York within the applicable statute of limitations period ("New York Made in USA Class")

47.   The New York Eco Class and New York Made in USA Class are referred collectively, as the "New York Classes." Plaintiff reserves the right to amend the Class definitions if discovery or further investigation reveals that the Classes should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

48.   The following people and entities are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the

Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

49. This action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

50. **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there are likely tens of thousands of Class members.

51. **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

    a. whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

    b. whether reasonable consumers would rely upon Defendant's representations on the Products and reasonably believe the ReCool Products meaningfully biodegrade under customary disposal in landfills, the EcoCool/REPREVE Products are made entirely from recycled materials, and the Made in USA Products are entirely made of raw materials made and sourced in the United States;

c.  whether Defendant knew or should have known its representations were false or misleading;

d.  whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

e.  whether certification of the Class is appropriate under Rule 23;

f.  whether Plaintiff and the members of each Class are entitled to declaratory, equitable, and/or other relief, and the scope of such relief; and

g.  the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

52.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation makes it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

53.    **Typicality:**  Plaintiff's claims are typical of the claims of the Classes he seeks to represent in that Plaintiff and members of the Classes have been and continue to be exposed to Defendant's false and misleading labeling, have purchased Products relying on the false and misleading labeling, and have suffered losses as a result of such purchases.

54.    **Adequacy:** Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the members of the Classes he seeks to represent,

and he has retained competent counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

55.    **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

56.    **Declaratory and Injunctive Relief:** Declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law. Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349,** *et seq.*
*(On behalf of Plaintiff and the New York Classes)*

57.    Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

58.    Plaintiff brings this claim individually and on behalf of the members of the New

York Classes against Defendant pursuant to New York's General Business Law ("GBL") § 349, *et seq.*

59.    GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

60.    The conduct of Defendant alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Classes seek monetary damages.

61.    Defendant misleadingly, inaccurately, and deceptively advertised and marketed its Products to consumers.

62.    Defendant's improper consumer-oriented conduct—including representing that the ReCool Products are biodegradable, the EcoCool and REPREVE Products are made entirely with recycled plastic/materials, and the Made in USA Products are made of entirely raw materials made and sourced in the USA – is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Class to purchase and pay a premium for Defendant's Products when they otherwise would not have, or would have paid less for. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

63.    Plaintiff and the New York Classes have been injured inasmuch as they paid a premium for the Products that did not meet a particular standard (i.e. that the ReCool Products are biodegradable, that the EcoCool and REPREVE Products are made entirely with recycled plastics/material or the Made in USA Products were made and sourced in the USA), contrary to Defendant's representations. Accordingly, Plaintiff and the New York Classes received less than what they bargained and/or paid for.

64.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Classes have been damaged thereby.

65.    As a result of Defendant's unlawful deceptive acts and practices, Plaintiff and the New York Classes are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**
***(On behalf of Plaintiff and the New York Class)***

66.    Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

67.    Plaintiff brings this claim individually and on behalf of the members of the New York Classes against Defendant pursuant to New York's General Business Law § 350, et seq.

68.    New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

69.    GBL § 350-a(1) provides, in part, as follows:

The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by

22

statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

70.    Defendant's labeling and marketing of the ReCool Products as biodegradable, the EcoCool and REPREVE Products as made entirely with recycled plastic/materials, and the Made in USA Products as made of entirely raw materials made and sourced in the USA are materially misleading representations inasmuch as they misrepresent that the Products contain certain characteristics that they do not have.

71.    Plaintiff and members of the New York Classes have been injured inasmuch as they relied upon the labeling and marketing of the Products and paid a premium for products that did not meet a particular standard (i.e. that the ReCool Products are biodegradable, that the EcoCool and REPREVE Products are made entirely with recycled plastics/material, or the Made in USA Products made of entirely raw materials made and sourced in the USA), contrary to Defendant's representations. Accordingly, Plaintiff and members of the New York Classes received less than what they bargained and/or paid for.

72.    Defendant's labeling and marketing of the Products induced Plaintiff and members of the New York Classes to buy Defendant's Products.

73.    Defendant made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

74.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were exposed to Defendant's material misrepresentations.

75.     As a result of Defendant's "unlawful" deceptive acts and practices, Plaintiff and the New York Classes are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF BREACH OF EXPRESS WARRANTY STATUTE**
**N.Y. U.C.C. Law § 2-313**
*(On behalf of Plaintiff and the New York Classes)*

76.     Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of the members of the New York Classes against Defendant for breach of express warranty under N.Y. U.C.C. Law § 2-313.

78.     New York's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. Law § 2-313.

79.     Defendant has expressly warranted through representations that the ReCool Products are biodegradable and the EcoCool and REPREVE Products contain all recycled

24

plastic/materials. Defendant has also expressly warranted through representations that the Made in USA Products' raw materials were completely made and sourced in the United States. These representations are affirmations made by Defendant to consumers that the ReCool Products are biodegradable and the EcoCool and REPREVE Products contain all recycled plastic/materials, and the Made in USA Products are made of entirely raw materials made and sourced in the USA. These representations became part of the basis of the bargain to purchase the Products and have created an express warranty that the Products would conform to these affirmations. In the alternative, the representations regarding the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which have created an express warranty that the Products would conform to the product descriptions.

80.    Plaintiff and members of the New York Classes have reasonably and justifiably relied on Defendant's express warranties that the Products are biodegradable, contain all recycled plastic/materials, or made of entirely raw materials made and sourced in the USA believing that the Products do in fact conform to those warranties.

81.    Defendant has breached the express warranties made to Plaintiff and members of the New York Classes by failing to manufacture, distribute and sell the ReCool Products as biodegradable, the EcoCool and REPREVE Products as made with all recycled plastic/materials, the Made in USA Products as made of entirely raw materials made and sourced in the USA.

82.    Plaintiff and members of the New York Classes have paid money for the Products but have not obtained the full value of the Products as represented.  If Plaintiff and members of the New York Classes had known of the true nature of the Products, they would not have purchased the Products, or would not have been willing to pay the premium price

associated with the Products. As a result, Plaintiff and members of the New York Classes have suffered injury and deserve to recover all damages afforded under the law.

**FOURTH CLAIM FOR RELIEF**
**VIOLATIONS OF BREACH OF IMPLIED WARRANTY STATUTE**
**N.Y. U.C.C. Law § 2-314**
**(*On behalf of Plaintiff and the New York Classes*)**

83.     Plaintiff repeats and realleges Paragraphs 1-56 as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of the members of the New York Classes who purchased the Products, against Defendant for breach of implied warranty under N.Y. U.C.C. Law § 2-314.

85.     New York's implied warranty of merchantability statute provide that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. Law § 2-314.

86.     New York's implied warranty of merchantability statutes also provide that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. Law § 2-314(2)(f).

87.     Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to New York consumers.

88.     In labeling the Products with specific Biodegradable Representations, Recycled Content Representations, and Made in USA Representations, Defendant has made a promise and/or affirmation of fact on label of the Products.

89.     By using the Biodegradable Representations, Recycled Content Representations, and Made in USA Representations, Defendant made an implied promise that

the ReCool Products are biodegradable, that the EcoCool and REPREVE Products contain all recycled plastic/materials, and that the Made in USA Products were made of entirely raw materials made and sourced in the USA. However, the Products have not "conformed to the promises . . . made on the container or label" because Defendant has represented and continues to represent that the ReCool Products are biodegradable, that the EcoCool and REPREVE Products contain all recycled plastic/materials, and that the Made in USA Products made of entirely raw materials made and sourced in the USA, which are not true. Plaintiff, as well as other New York consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under New York law and Defendant has breached its implied warranty of merchantability in regard to the Products. If Plaintiff and members of the New York Classes had known that the Products' representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the New York Classes have suffered injury and deserve to recover all damages afforded under the law.

**FIFTH CLAIM FOR RELIEF**
**IN THE ALTERNATIVE, UNJUST ENRICHMENT**
*(For the Nationwide Classes, or in the alternative, for the New York Classes)*

90.    Plaintiff repeats the allegations contained in paragraphs 1-56 above as if fully set forth herein.

91.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Classes, or in the alternative the New York Classes, against Defendant.

92.    Plaintiff and the Classes purchased Defendant's Products and paid a premium

for the Products. Defendant misrepresented that the ReCool Products are biodegradable, and that the EcoCool and REPREVE Products contain all recycled plastic/materials, and the Made in USA Products were made of entirely raw materials made and sourced in the USA, which commanded a price premium on the market.

93.    Defendant had knowledge of such benefit and obtained the benefit by its misrepresentations because the misrepresentations induced reasonable consumers to purchase the Products when they would not otherwise have purchased them or would have purchased them at a lower price.

94.    Defendant appreciated this benefit and knowingly accepted it at the expense of, and to the detriment of, Plaintiff and the Classes. Defendant currently retains this benefit.

95.    Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefit was obtained by Defendant's misconduct detailed at length in this Complaint.

96.    Equity cannot in good conscience permit Defendant to be economically enriched for such action at the expense of Plaintiff and the Classes, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Classes, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

a.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.    A declaration or declaratory judgment that Defendant's conduct has violated and continues to violate the statutes and laws cited herein;

c.    An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and members of the Classes to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice;

d.    An award of damages, including all available statutory and punitive damages, pursuant to the statutes and the causes of action pled herein;

e.    Distribution of any monies recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and applicable, to prevent Defendant from retaining the benefit of its wrongful conduct;

f.    an award of all recoverable costs and expenses, including reasonable fees for Plaintiff's attorneys; and

g.    an award of pre- and post-judgment interest to Plaintiff and members, Each of the Classes if applicable; and, ordering further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff and members of the Classes demand a jury trial on all issues so triable.

Dated: January 29, 2025                    **CUSTODIO & DUBEY, LLP**

                                           By*: /s/ Robert Abiri*

                                           Robert Abiri (5375449)
                                           E-mail: abiri@cd-lawyers.com
                                           445 S. Figueroa Street, Suite 2520

Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

**TREEHOUSE LAW, LLP**
Joshua Nassir (SBN 318344)
*(pro hac vice forthcoming)*
Benjamin Heikali (SBN 307466)
*(pro hac vice forthcoming)*
Ruhandy Glezakos (SBN 307473)
*(pro hac vice forthcoming)*
3130 Wilshire Blvd. Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
jnassir@treehouselaw.com
bheikali@treehouselaw.com
rglezakos@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*