UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOE LIEBER, KAREN ELIZABETH HARMS, AND
DARIN STRAUSS, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED,

                                 *Plaintiffs*,

     -against-

IGLOO PRODUCTS CORP.,

                                 *Defendant*.

25-CV-488 (ARR) (LKE)

**OPINION & ORDER**

ROSS, United States District Judge:

      This case involves a variety of products made and sold by defendant Igloo Products Corp. ("Igloo") marketed as "biodegradable," made of "recycled content," and "Made in the USA." Plaintiffs Joe Lieber, Karen Harms, and Darin Strauss ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this suit alleging that Igloo's representations are false and misleading, constituting deceptive and unfair trade practices under New York General Business Law ("NYGBL") § 349, false advertising under NYGBL § 350, a breach of express warranty under N.Y. U.C.C. Law § 2-313, and, in the alternative, unjust enrichment.

      Before me is Igloo's motion to dismiss Mr. Lieber's Second Amended Complaint ("SAC"). ECF No. 24. For the reasons that follow, defendant's motion is granted in part and denied in part.

## BACKGROUND

      Igloo is a Delaware corporation that manufactures, labels, distributes, sells, and advertises the products at issue in this litigation. SAC ¶ 10. The products at issue include four groups of Igloo brand products: the EcoCool Products, the ReCool Product, the REPREVE Products, and the Made in USA Products ("Products"). *Id.* ¶ 15. Igloo sells the Products directly to consumers through its website, and through at least 73 retail partners across the country including Target, Walmart,

Costco, and REI. *Id.* ¶ 14. First, defendant markets and sells the ReCool Product with front-label representations that state "Made From Biodegradable Materials" and "Biodegradable" (the "Biodegradable Representations"). *Id.* ¶ 2. Second, it markets and sells the EcoCool and REPREVE Products with front-label representations that state "Made With Post Consumer Recycled Plastic Material," and "Made From Recycled Plastic Bottles," often accompanied by chasing-arrows recycling symbols (the "Recycled Content Representations"), with no disclaimer or qualification. *Id.* ¶ 3. Finally, it markets and sells the Made in USA Products with representations that they are "Made in USA" or "Made in the USA" (the "Made in USA Representations"), with no disclaimer or qualification. *Id.* ¶ 4.

Plaintiff Mr. Lieber is a citizen of New York who purchased the ReCool Product multiple times from a Target store in Brooklyn, New York. *Id.* ¶ 8. Mr. Lieber saw and relied on the Biodegradable Representations and Made in USA Representations in purchasing the ReCool Product, believing that the purchased product would completely degrade within a reasonable period of time after customary disposal (which he alleges to be under normal landfill conditions) and that it was made of raw materials made and sourced in the United States. *Id.* ¶¶ 8, 47. The SAC alleges that Mr. Lieber would not have purchased the ReCool Product, or would have paid significantly less for it, if it did not have these qualities. *Id.* ¶ 8.[1]

---

[1] Plaintiff Mr. Strauss similarly purchased a ReCool Product from a Target in Brooklyn, New York in reliance on the "biodegradable" and "Made in the USA" representations. *See* Complaint, ECF No. 1, *Strauss v. Igloo Products Corp.*, 25-CV-2764. Mr. Strauss's case was originally before the Honorable District Judge Amon, and the case was reassigned to me on October 23, 2025. Docket Order, dated October 23, 2025. On December 1, 2025, I consolidated the case brought by Mr. Strauss with the case brought by Mr. Lieber and Ms. Harms, and directed Mr. Strauss to file an opposition to Igloo's Motion to Dismiss the Second Amended Complaint on the *Lieber* docket. Docket Order, dated December 1, 2025. Mr. Strauss filed his opposition on December 15, 2025. Memorandum in Opposition ("Strauss Opp."), ECF No. 34. Igloo replied to Mr. Strauss's opposition on December 22, 2025. Reply in Support of Motion to Dismiss ("Strauss Reply"), ECF No. 36.

Similarly, plaintiff Ms. Harms is a citizen of Texas who purchased a 30-quart EcoCool Product from an REI store in New York. *Id.* ¶ 9. Ms. Harms saw and relied on the Recycled Content Representations in purchasing the EcoCool Product, believing that it was made entirely with post-consumer recycled plastic material. *Id.* The SAC alleges that she would not have purchased the EcoCool Product, or would have paid significantly less for it, if it did not have this quality. *Id.*

First, Plaintiffs argue that Igloo's Biodegradable Representations would lead reasonable consumers to believe that the ReCool Product would completely degrade within a reasonable period of time after customary disposal. *Id.* ¶ 17. Alleging that the ReCool Product does not completely degrade within a reasonable time after customary disposal because it typically ends up in landfills after it is thrown out, Plaintiffs argue that the Biodegradable Representations are false and misleading. *Id.* ¶ 18. In support of this characterization, the SAC cites the Federal Trade Commission's ("FTC") Green Guides, which were created by the FTC to help companies avoid making misleading and deceptive claims. *Id.* ¶ 19. Specifically, Plaintiffs point to 16 C.F.R. § 260.8(c), which states that

> It is deceptive to make an unqualified degradable claim for items entering the solid waste stream if the items do not completely decompose within one year after customary disposal. Unqualified degradable claims for items that are customarily disposed in landfills, incinerators, and recycling facilities are deceptive because these locations do not present conditions in which complete decomposition will occur within one year.

*Id.* (quoting 16 C.F.R. § 260.8(c)). Plaintiffs argue that the FTC requires companies to clearly and prominently qualify biodegradable claims "to avoid deception about: (1) the product's or package's ability to degrade in the environment where it is customarily disposed." *Id.* ¶ 21 (citing 16 C.F.R. § 260.8(d)). Pointing to studies that show that landfill conditions prevent meaningful biodegradation and the Green Guide's stance on unqualified degradable claims for items customarily disposed of in landfills, Plaintiffs allege that the Biodegradable Representations

3

mislead environmentally conscious consumers who paid a premium for the ReCool Product. *Id.* ¶¶ 19–23.

Second, Plaintiffs argue that the Recycled Content Representations lead reasonable consumers to believe the EcoCool and REPREVE Products are made entirely of recycled plastic and materials. *Id.* ¶¶ 25–26. Alleging that only certain components of these products contain recycled plastic and that other parts (such as foam insulation and interior linings) are not made from recycled materials, Plaintiffs argue that Igloo's Recycled Content Representations are false and misleading because the EcoCool and REPREVE Products are only "partially made from recycled materials." *Id.* ¶ 27. Again, the SAC points to the FTC's Green Guides in support of the proposition that the Recycled Content Representations are misleading:

> Marketers can make unqualified claims of recycled content if the entire product or package, excluding minor, incidental components, is made from recycled material. For items that are partially made of recycled material, the marketer should clearly and prominently qualify the claim to avoid deception about the amount or percentage, by weight, of recycled content.

*Id.* ¶ 28 (citing 16 C.F.R. § 260.13(c)). Plaintiffs cite Example 8 in the FTC Green Guides which explains that "a product labeled with the three-chasing-arrows symbol (Möbius loop), without explanation, 'likely conveys that the [product or] packaging is both recyclable and made entirely from recycled material.'" *Id.* ¶ 29 (citing 16 C.F.R. § 260.13(c)). Citing the FTC's Green Guides for support, Plaintiffs allege that the EcoCool and REPREVE Product's failure to provide any qualifications regarding the Recycled Contents Representations misleads consumers into believing that the products are made entirely of recycled materials. *Id.* ¶¶ 24–31.

Third, Plaintiffs allege that the Made in USA Representations lead reasonable consumers to believe that all or virtually all aspects of the Made in USA Products, including the raw materials, components, and manufacturing processes, originate from and occur within the United States. *Id.*

¶¶ 32–35. The SAC alleges that the Made in USA Products are not entirely made of raw materials made and sourced in the United States, and that substantial components are sourced and processed in other countries. *Id.* ¶ 36. Specifically, Plaintiffs point to the ReCool Product as containing alkyl ketene dimer ("AKD"), a material that is mostly produced in China. *Id.* ¶ 37. Furthermore, the SAC alleges that the THERMECOOL insulation used in certain Made in USA Products contains "polyols" which are likely manufactured outside of the United States. *Id.* ¶ 38. Igloo is also alleged to import full components of Made in USA Products, such as hinges, handles, drain plugs, bottle openers, spigots, washers, and wheels, from manufacturers outside of the Untied States. *Id.* ¶ 39. The FTC defines "Made in the United States" and its synonyms to mean "any unqualified representation[], express or implied, that a product, and by extension, the raw materials used in its manufacture, are of U.S. origin." *Id.* ¶ 41 (citing 16 C.F.R. §§ 323.1(a), 323.2). Citing FTC guideline 16 C.F.R. § 323.2, which considers it a deceptive practice to label a product as "Made in the United States" or with substantially similar representations unless (1) the final assembly or processing of the product occurs in the United States, (2) all significant processing that goes in the product occurs in the United States, and (3) all or virtually all ingredients or components of the product are made and sourced in the United States, Plaintiffs argue that Igloo's failure to qualify its Made in the USA Representations constitutes a false and misleading practice. *Id.* ¶¶ 40–42.

Plaintiffs argue that the unqualified Biodegradable Representations, Recycled Content Representations, and Made in the USA Representations were material to Mr. Lieber and Ms. Harms in their purchase of Igloo products, and affected their and other consumers' purchasing decisions. *Id.* ¶¶ 23, 31, 44. The SAC alleges that Igloo knew or should have known that consumers would rely on these allegedly misleading representations in purchasing these three categories of Igloo products. *Id.* ¶¶ 46–55. As such, Plaintiffs brought this action pursuant to Fed. R. Civ. P.

Rule 23 on behalf of themselves and those similarly situated, seeking to represent six classes consisting of nationwide and New York State consumers who have purchased the (1) ReCool Products, (2) EcoCool and REPREVE Products, and/or (3) Made in USA Products. *Id.* ¶¶ 56–66.

Igloo served their motion to dismiss Plaintiffs' Second Amended Complaint on August 28, 2025. Motion to Dismiss Second Amended Complaint ("Mot."), ECF No. 29. Plaintiffs served their response in opposition on October 2, 2025. Response in Opposition ("Opp."), ECF No. 30. Defendant replied on October 30, 2025. Reply in Support of Motion to Dismiss ("Reply"), ECF No. 31.

## LEGAL STANDARD

The inquiry on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) concerns whether the district court has the statutory or constitutional power to adjudicate the case. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). However, plaintiff's preliminary showing is not meant to be overly burdensome, "allowing for subject matter jurisdiction so long as 'the federal claim is colorable.'" *Cromer Fin. v. Berger*, 137 F.Supp.2d 452, 467 (S.D.N.Y. 2001) (quoting *Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which means that the plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, a district court generally "accept[s] all factual allegations in the complaint as true and draw[s] inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quotation marks omitted). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, [ ] documents incorporated by reference in the complaint," and documents on which the complaint relies so heavily that the document is rendered "integral to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotations omitted). Where a complaint repeatedly references a product label or packaging, the court "may take judicial notice of the actual package, even on a motion to dismiss." *Waldman v. New Chapter, Inc.*, 714 F.Supp.2d 398, 400 n.1 (E.D.N.Y. 2010).

## DISCUSSION

Igloo moves to dismiss the SAC's claims, which are for violations of N.Y. G.B.L. §§ 349 and 350, breach of express warranty, and unjust enrichment.

## I.    Claims Under New York GBL §§ 349 and 350

Igloo moves to dismiss the SAC's claims under N.Y. G.B.L. on the ground that the SAC does not plausibly allege that the Biodegradable Representations, the Recycled Content Representations, and the Made in the USA Representations are false or likely to mislead a reasonable consumer.

### A.  Legal Standard

Section 349 of the N.Y. G.B.L. prohibits "[d]eceptive acts or practices in the conduct of

any business, trade or commerce[.]" Section 350 of the N.Y. G.B.L. prohibits "[f]alse advertising in the conduct of any business, trade or commerce[.]" To state a claim under either statute, a plaintiff must "allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012)). Under New York law, courts "apply an objective standard in determining whether acts or practices are materially deceptive or misleading to 'a reasonable consumer acting reasonably under the circumstances.'" *Orrico v. Nordic Nats., Inc.*, No. 22-CV-03195, 2023 WL 6308015, at *2 (E.D.N.Y. Sept. 28, 2023) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). The reasonable consumer standard "requires 'more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024) (quoting *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023)). Rather, the plaintiff must establish "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *McGinity*, 69 F.4th at 1097).

To survive a motion to dismiss, a plaintiff must plausibly allege that the conduct complained was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quotation marks omitted). "At the pleading stage, a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer, but it must proceed with care in doing so as the inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 295 (S.D.N.Y. 2022) (quotation marks

and citation omitted); *see also Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) ("[T]he question of whether a reasonable consumer would be deceived by a 'natural' label is not typically resolved at the motion to dismiss stage"). Because "context is crucial" to determining "whether a reasonable consumer would have been misled," I must "consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Mantikas*, 910 F.3d at 636 (quotations omitted); *see also Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 178 (2021) ("What is objectively reasonable depends on the facts and context of the alleged misrepresentations[.]").

Pursuant to N.Y. G.B.L. § 349(d), it is a "complete defense" to liability under that section if the defendant's "act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any other official department, division, commission or agency of the United States." The same is true under N.Y. G.B.L. § 350. *See* N.Y. G.B.L. § 350-d(a) ("[I]t shall be a complete defense that the [allegedly unlawful] advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission or any official department, division, commission or agency of the state of New York."). The "Green Guides," promulgated by the FTC, 16 C.F.R. § 260.12, "establish[] commercial practices regarding recyclability claims." *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 846 (N.D. Cal. 2019). A court may evaluate a challenged representation's compliance with the FTC's Green Guides to determine whether or not there is a complete defense to a claim under N.Y. G.B.L. §§ 349 and 350. *See Natale v. 9199-4467 Quebec Inc.*, No. 21-CV-6775, 2023 WL 4850531, at *5–6 (E.D.N.Y. July 28, 2023).

As a threshold matter, parties dispute the relevance and applicability of the FTC's Green Guides in determining the substance of Plaintiffs' N.Y. G.B.L. §§ 349 and 350 claims. First, Igloo

argues that Plaintiffs' claims should be dismissed because the Green Guides do not create a private right of action. Mot at 9–10. Second, defendant argues that the Green Guides have no bearing on the expectations of a reasonable consumer because the average person is unlikely to know what the Green Guides are. Mot. at 9–12, 13–16. Finally, Igloo argues that Plaintiffs fail to plead that the expectations of a reasonable consumer align with the demands of the Green Guides regarding claims of biodegradability and recycled content. *Id.* In response, Plaintiffs argue that they are not bringing a cause of action under the Green Guides, and that the FTC's analysis of a reasonable consumer's expectations in the Green Guides act to bolster the plausibility of Plaintiffs' N.Y. G.B.L. §§ 349 and 350 claims. Opp. at 13–15.

I find that Igloo's motion misconstrues Plaintiffs' citation to the FTC's Green Guides, which illustrate how unqualified representations of a product's qualities may plausibly deceive and mislead a reasonable consumer. Indeed, courts in this circuit, when analyzing the phrase "deceptive practices" in N.Y. G.B.L. § 349, regularly rely on the FTC Act's definition of such practices. *See Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 644 (S.D.N.Y. 2016) (quoting *Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch*, 593 F.Supp. 743, 752 (S.D.N.Y. 1984)). In the event that I find that Igloo does not have a complete defense under the FTC's Green Guides, I may consider agency guidance to analyze whether the SAC sufficiently alleges that the Biodegradable Representations and Recycled Content Representations were likely to mislead a reasonable consumer. *See Dorris v. Danone Waters of Am.*, No. 22-CV-8717, 2024 WL 4792048, at *4 (S.D.N.Y. Nov. 14, 2024) (applying FTC Green Guides to find that a reasonable consumer would not be misled by "carbon neutral" labeling).

### B. Application

Defendant Igloo moves to dismiss Plaintiffs' N.Y. G.B.L. §§ 349 and 350 claims challenging the Biodegradable Representations, the Recycled Content Representations, and the Made in USA Representations.

#### 1. Biodegradable Representations

The SAC alleges that the Biodegradable Representations as to the ReCool Product are false or misleading, so as to violate N.Y. G.B.L. §§ 349 and 350, because the ReCool Product is typically thrown away in trash cans, thus ending up in landfills hostile to biodegradation. SAC ¶¶ 18, 20. As such, the SAC alleges that the ReCool Product is marketed and sold with no qualifications, thereby deceiving consumers. *Id.* ¶ 21.

Defendant Igloo's motion argues that the SAC contains no allegations that the ReCool Product cannot biodegrade at all, which suggests that the product is biodegradable if it is disposed of in a certain way. Mot. at 7–8. Arguing that "the term 'biodegradable' does not mean 'will biodegrade' or 'destined for inevitable biodegradation,'" Igloo contends that Plaintiffs' claims fail because they do not allege that the ReCool Product is inherently incapable of biodegrading. *Id.* at 9. Finally, defendant argues that, to the extent the FTC's Green Guides are relevant, Plaintiff has not alleged facts capable of establishing that the Biodegradable Representations do not comply with those guidelines. *Id.* at 11–12. In response, Plaintiffs argue that the reasonable consumer would understand the Biodegradable Representations to mean that the ReCool Product would biodegrade following customary disposal in a landfill.

Drawing inferences from the SAC in the light favorable to Plaintiffs, I find that they have adequately alleged that the Biodegradable Representations are potentially deceptive. As a preliminary matter, Plaintiffs have plausibly alleged that the ReCool Product does not comply with

the Green Guides, which states that "[u]nqualified degradable claims for items that are customarily disposed in landfills . . . are deceptive because these locations do not present conditions in which complete decomposition will occur within one year." 16 C.F.R. § 260.8(c). The SAC alleges that the ReCool Product "is typically thrown in the trash and ends up in landfills . . . an environment that lacks the necessary conditions . . . for meaningful biodegradation." SAC ¶ 18. Beyond reference to the FTC's Green Guides, the SAC cites studies that state that landfills present barriers to biodegradation. SAC ¶ 22. Nevertheless, I make no conclusions as a matter of law or fact whether a reasonable consumer would expect their ReCool Product to biodegrade in a landfill. As the late District Judge Weinstein recognized, at least in some cases, "[a] federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that reasonable consumers would not be misled. *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F.Supp.2d 401, 407 (E.D.N.Y. 2004) (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world"). At this nascent stage of the case and without reaching a determination as a matter of law or fact as to whether a reasonable consumer would be misled by the Biodegradability Representations, I find that Plaintiffs have plausibly alleged their N.Y. G.B.L. §§ 349 and 350 claims as to the ReCool Product. Therefore, I deny Igloo's motion to dismiss Plaintiffs' claims as to the ReCool Product.

### 2. Recycled Content Representations

The SAC alleges that the Recycled Content Representations regarding the EcoCool and REPREVE Products violate N.Y. G.B.L. §§ 349 and 350 because the unqualified representations give reasonable consumers the false impression that the products are made entirely of recycled plastic or recycled materials.

Again, the SAC has alleged that the Recycled Content Representations do not comply with the FTC's Green Guides, which require marketers, for "items that are partially made of recycled material," to "clearly and prominently qualify the claim to avoid deception about the amount or percentage, by weight, of recycled content in the finished product or package." 16 C.F.R. § 260.13(c). The SAC alleges that the EcoCool and REPREVE Products contain non-recycled materials. SAC ¶ 27. With no complete defense to the N.Y. G.B.L. §§ 349 and 350 claims, Igloo argues that Plaintiffs' claims fail as a matter of law because a reasonable consumer would not interpret the term "Made with Post Consumer Recycled Plastic Materials" as implying that the relevant products were made exclusively from recycled materials. Mot. at 12. While defendant cites numerous decisions where courts declined to read "exclusively" into an advertising claim— such as whether the phrase "real cocoa" on a product's packaging implied that a product is made exclusively of real cocoa—it fails to consider that purchasing decisions are made within a specific context. *Id.* at 13 (citing *Harris v. Mondelēz Global LLC*, 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020)). Indeed, the SAC cites the FTC Green Guides to suggest that a reasonable consumer may interpret the Recycled Content Representations to mean that the product they are purchasing are made entirely from recycled materials. SAC ¶ 29. At this stage, I decline to determine whether a reasonable consumer would or would not be misled by the Recycled Content Representations. Nevertheless, I find that Plaintiffs have plausibly alleged their N.Y. G.B.L. §§ 349 and 350 claims as to the EcoCool and REPREVE Products and deny Igloo's motion to dismiss Plaintiffs' N.Y. G.B.L. §§ 349 and 350 claims as to those products.

### 3. Made in USA Representations

The SAC alleges that the Made in USA Representations as to the Made in USA Products, as unqualified claims, violate N.Y. G.B.L. §§ 349 and 350 because the products are not entirely

made of raw materials made and sourced in the United States. SAC ¶ 36. Specifically, the SAC alleges that the RECOOL Product contains AKD, and that most of the world's AKD is produced outside of the United States and only a "minimal amount" is produced in the United States. *Id.* ¶ 37. Therefore, Plaintiffs allege that Igloo sources its AKD from outside the United States. *Id.* Furthermore, the SAC alleges that the THERMECOOL insulation used in the Made in USA Products contains polyols that are manufactured in plants in Asia, Europe, and North America. *Id.* ¶ 38. Finally, the SAC alleges that "full components" of the Made in USA Products are imported from manufactures located outside of the United States. *Id.* ¶ 39.

Defendant Igloo argues that this Plaintiffs' claims as to the Made in USA Products fail because the pleadings admit that there is a possibility that the materials and components that Plaintiffs identify as coming from a foreign source were in fact sourced and produced in the United States. Mot. at 16–17. In response, Plaintiffs argue that this interpretation of the factual allegations in the SAC improperly draws inferences in the defendant's favor, and that this factual question should not be considered at this juncture. Opp. at 17–23.

Plaintiffs have alleged that the relevant products contain "materials" and "full components" sourced and imported from other countries. SAC ¶¶ 36–43. This is sufficient to allege that the Made in USA Representations were materially misleading. *See Washington v. Reynolds Consumer Prods., LLC*, No. 24-CV-02327, 2025 WL 673615, at *1 (S.D.N.Y. Mar. 3, 2025) (permitting "Made in U.S.A." N.Y. G.B.L. §§ 349 and 350 claims to move forward where plaintiff alleged that "a substantial amount of the bauxite that is used (ultimately) in the aluminum in the Products . . . are transformed into aluminum outside of the United States"). Still, I find that reaching the question of whether the Made in USA Representations are misleading as a matter of law is not an appropriate consideration at the pleading stage. *See Verizon Directories Corp.*, 309 F. Supp. 2d at

14

407; *see also Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 237–38 (S.D.N.Y. 2021) (finding that it was inappropriate to conclude as a matter of law that the use of the word "natural" on the advertising and packaging of products cannot reasonably be understood to represent that the product does not contain synthetic products or GMOs).

I deny Igloo's motion to dismiss Plaintiffs' claims as to the Made in USA Products.

## II.  Breach of Express Warranty Claim

Under New York law, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2-313(1)(b). To plead breach of an express warranty under New York law, a plaintiff must allege "(i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach." *Avola v. Louisiana-P. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013). "Generally, where courts find a plaintiff adequately states her [N.Y.] GBL claims, they find those allegations also suffice to state the elements for a breach of express warranty." *Ward v. Pepperidge Farm, Inc.*, 773 F.Supp.3d 10, 23 (S.D.N.Y. 2025).

"The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013) (quoting N.Y. U.C.C. § 2-607(3)(a)). When a plaintiff discovers or should have discovered an alleged breach "is the relevant trigger under New York law" with respect to the timeliness of an express warranty claim. *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 87 (S.D.N.Y. 2020); *Patellos v. Hello Products, LLC*, 523 F. Supp. 3d 523, 534 (S.D.N.Y. 2021) ("[N]otice [must] be given promptly after the injury occurs (or, as here, is apparent)." (citation omitted)).

15

Defendant argues that the breach of express warranty claim should be dismissed because Plaintiffs "failed to provide Igloo with the requisite [pre-suit] notice." Mot. at 20. Igloo submits that Mr. Lieber filed suit on January 29, 2025, that Ms. Harms joined the lawsuit on June 30, 2025, and that it was not provided with notice until July 22, 2025—almost six months after Plaintiffs filed the complaint. *Id.* Furthermore, Igloo states that it was only provided notice after it raised the notice issue in the letter brief that preceded the instant motion. *Id.*; *see* ECF No. 25 at 3. Plaintiffs argue that New York law only requires the provision of notice after the discovery of breach and does not require that notice be provided prior to the filing of a complaint. Opp. at 24. Additionally, Plaintiffs point out that the notice was provided to Igloo two weeks prior to the filing of the SAC on August 7, 2025. *Id.* In any event, Plaintiffs argue that the "sufficiency and timeliness of the notice is generally a question for the jury" and should not be resolved at the motion to dismiss stage. *Id.* (quoting *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 533 (S.D.N.Y. 2021)).

I find that Plaintiffs have failed to allege that they provided Igloo with reasonably prompt notice. In so doing, I concur with the conclusion of a majority of courts in this circuit that pre-suit notice is generally required in bringing a claim for breach of express warranty. *See Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d at 246 (collecting cases); *see also Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 685 (S.D.N.Y. 2021) (observing that the pre-suit notice requirement is waived only in cases involving personal injury). Here, Plaintiffs provided defendant Igloo with notice only after commencing litigation. Therefore, I grant defendant's motion to dismiss as to Plaintiffs' breach of express warranty claim.

## III.   Unjust Enrichment Claim

Next, Igloo moves to dismiss the SAC's unjust enrichment claim as duplicative of the N.Y. G.B.L. claims. Mot. at 21–23. Plaintiffs argue their unjust enrichment claims are not duplicative

because a trier of fact could find that there was unjust enrichment without establishing all of the elements for their claims under N.Y. G.B.L. §§ 349 and 350. Opp. at 25–26. They further argue that they should be permitted to plead even a duplicative claim in the alternative. *Id.* at 26. In response, defendant Igloo argues that, given that there is no dispute as to the existence of an express warranty, Plaintiffs need not resort to unjust enrichment because an adequate remedy at law exists. Reply. at 12.

As I have previously observed, "[d]istrict courts in this circuit have reached varying conclusions as to whether an unjust enrichment claim can survive a motion to dismiss when it is based on the same facts as the plaintiff's claim under the GBL." *Seaman v. This Is L., Inc.*, No. 24-CV-3524, 2024 WL 4449405, at *6 (E.D.N.Y. Oct. 2, 2024) (collecting cases). The New York Court of Appeals has held that "[u]njust enrichment is not a catchall cause of action to be used when others fail" and "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 740 (2012). Rather, it "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* Nevertheless, Rule 8(d)(3) of the Federal Rules of Civil Procedure permits a party to state "as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Indeed, the Second Circuit, in the context of a deceptive business practices and false advertising case, has noted in a summary order that "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020) (summary order).

Here, the unjust enrichment claim clearly duplicates Plaintiffs' other claims, which arise out of identical facts regarding Igloo's alleged misrepresentations. While Plaintiffs argue that the

17

elements for an unjust enrichment claim are distinct from the elements for their N.Y. G.B.L. claims under §§ 349 and 350, they offer no set of facts under which they could fail to prove both their deceptive-practices and false-advertising claims while succeeding in proving unjust enrichment. *See Del Rosario v. Sazerac Co., Inc.*, No. 23-CV-1060, 2023 WL 6318083, at *4 (S.D.N.Y. Sept. 28, 2023) (dismissing unjust enrichment claim under similar circumstances where the existence of an express warranty was not in dispute). Because Plaintiffs' unjust enrichment claim under New York law is based on the same allegations as her claims of violations of N.Y. G.B.L. §§ 349 and 350 and breach of express warranty under New York law, and because Plaintiffs have not shown how their unjust enrichment claim differs from their other New York claims, I dismiss the SAC's unjust enrichment claim as duplicative of the other New York claims. *See, e.g.*, *Silva v. Hornell Brewing Co.*, No. 20-CV-756, 2020 WL 4586394, at *6–7 (E.D.N.Y. Aug. 10, 2020) (dismissing unjust enrichment claim as duplicative).

IV.    **Standing as to Unpurchased Products**

Finally, Igloo argues that Plaintiffs lack standing to bring a class action with respect to the Products that they did not purchase. Mot. at 23–29. In response, Plaintiffs contend that they have standing to challenge any unpurchased Products because the challenged representations and harms suffered are substantially similar to that of the products that Mr. Lieber and Ms. Harms did purchase. Opp. at 27; *see also* SAC ¶ 26 ("As demonstrated above, the EcoCool and REPREVE coolers make sufficiently similar misrepresentations that lead reasonable consumers to believe that the EcoCool Products and REPREVE Products are made entirely of recycled plastic or recycled materials."); SAC ¶ 34 ("These representations are sufficiently similar across all Made in USA Products and lead reasonable consumers to believe that all or virtually all aspects of the Made in

USA Products—including the raw materials, components, and manufacturing processes—originate from and occur within the United States.").

A plaintiff in a putative class action has class standing if "he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant . . . and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants[.]" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal citations and quotations omitted). District courts in this Circuit are divided over whether class standing should be resolved at the pleading stage or the class certification stage. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 562–63 (S.D.N.Y. 2016) (collecting cases that have and have not resolved class standing at the motion to dismiss stage). Several courts "have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase." *Daniel v. Tootsie Roll Indus., LLC*, No. 17-CV-7541, 2018 WL 3650015, at *5 (S.D.N.Y. Aug. 1, 2018) (quoting *Mosely v. Vitalize Labs, LLC*, No. 13-CV-2470, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015) (citations omitted)).

Here, to the extent class standing must be addressed at this stage, the Products (both purchased and unpurchased) are sufficiently similar as to support Plaintiffs' class standing at this time. Specifically, the "nature and content of the specific misrepresentation alleged," *NECA–IBEW Health & Welfare Fund*, 693 F.3d at 162, is similar because the Products were all sold and marketed by defendants and possessed the same allegedly deceptive representation that the products were made of recycled contents or made in the United States; *see*, *e.g.*, *Suarez v.*

19

*California Nat. Living, Inc.*, No. 17-CV-9847, 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019) (finding plaintiff had class standing to challenge unpurchased products where the products were "sold and marketed by defendant," "labeled and marketed as 'natural' (or, in one instance, "naturally perfect for the whole family," and "plaintiff alleges each product contains one or more synthetic ingredients")); *Buonasera v. Honest Company, Inc.*, 208 F. Supp. 3d 555, 559, 563 (finding plaintiff had class standing as to thirty-nine unpurchased cosmetics products allegedly mislabeled as "'natural,' 'all natural,' 'naturally derived,' 'plant-based,' and/or containing 'no harsh chemicals ever!,'" even where "the unpurchased products may contain different ingredients compared to the purchased products").

Thus, Igloo's motion to dismiss for lack of standing as to unpurchased Products is denied without prejudice, and "any specific concerns regarding the [Products'] differences can be addressed at the class certification stage." *Wai Chu v. Samsung Elecs. Am., Inc.*, No. 18-CV-11742, 2020 WL 1330662, at *3 (S.D.N.Y. Mar. 23, 2020) (quotation marks omitted); *see also Moses v. Apple Hospitality REIT Inc.*, 14-CV-3131, 2016 WL 8711089, at *4 (E.D.N.Y. Sept. 30, 2016) (holding that "[s]ince Plaintiff has Article III standing, the more prudent approach is to analyze class standing at the class certification stage because the Plaintiff has already established a case or controversy between the parties"). Accordingly, I deny without prejudice Igloo's motion to dismiss Plaintiffs' claims arising from unpurchased Products. Defendant may renew this argument at the class certification stage.

## CONCLUSION

For the stated reasons, it is hereby ordered that defendant Igloo's Motion to Dismiss (ECF No. 29) is granted in part and denied in part to the extent that Plaintiffs' claims for Breach of

Express Warranty (Claim Three) and Unjust Enrichment (Claim Four) are dismissed. Plaintiffs'

remaining claims survive said motion.

SO ORDERED.


_____/s/_____

Allyne R. Ross
United States District Judge


Dated:  February 2, 2026
        Brooklyn, New York


21